## Affidavit in Support of Seizure Warrant

### I. Purpose of the Affidavit

This Affidavit is submitted in support of an application for a seizure warrant for the funds held as capital of Bitstamp Limited that correspond to liabilities pertaining to the accounts specified on Attachment A.

I submit that there is probable cause to believe that the funds held as capital of Bitstamp Limited that correspond to liabilities pertaining to the accounts specified on Attachment A were involved in transactions and attempted transactions in violation of 18 U.S.C. section 1960, and that the funds held as capital of Bitstamp Limited that correspond to liabilities pertaining to the accounts specified on Attachment A are subject to seizure and forfeiture pursuant to 18 U.S.C. section 981(a)(1)(A).

### II. Affiant

Your affiant, Shaun Bridges, is a Special Agent with the United States Secret Service (USSS). While working for the USSS your affiant has prepared and executed state and federal search and seizure warrants, seized evidence of both state and federal violations, interviewed suspects, witnesses, and informants, and evaluated evidence obtained during the course of these investigations.

### III. Applicable Statutes

<u>18 U.S.C. section 1960</u>
(a) Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business, shall be fined in accordance with this title or imprisoned not more than 5 years, or both.
(b) As used in this section—
    (1) the term "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and—
        (A) is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;
        (B) fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section; or
        (C) otherwise involves the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity;
    (2) the term "money transmitting" includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier; and

(3) the term "State" means any State of the United States, the District of Columbia, the Northern Mariana Islands, and any commonwealth, territory, or possession of the United States.

<u>18 U.S.C. section 981</u>
(a)(1) The following property is subject to forfeiture to the United States:
    (A)    Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957, or 1960 of this title, or any property traceable to such property.

\* \* \*

## IV. Probable Cause

The information set forth below is based upon your affiant's review of records and upon information provided by other sworn law enforcement officers participating in this investigation. I have not included each and every fact obtained pursuant to this investigation, but have set forth those facts that I believe are essential to establish the necessary foundation for the issuance of the seizure warrants for the contents of the specified accounts.

During an ongoing collaborative effort between the United States Secret Service, Internal Revenue Service, and Bitstamp Limited, participants in the effort identified the accounts specified on Attachment A as being out of compliance with Anti Money Laundering (AML) regulations. Because Bitstamp is required to register with the Financial Crimes Enforcement Network, in accordance with 31 U.S.C. section 5330, and is required to comply with regulations prescribed thereunder, maintenance of those accounts that are not in compliance would place Bitstamp in violation of 18 U.S.C. section 1960. Also, the Attachment A accounts all were created and engaged in transactions prior to Bitstamp registering with FinCEN; consequently, those accounts were part of an unlicensed money transmitting business in violation of 18 U.S.C. section 1960.

Bitstamp Limited ("Bitstamp") is a Bitcoin exchange incorporated in the United Kingdom that has its principle operations located in Slovenia. Bitstamp acts as a digital currency exchange where customers can open accounts and fund their respective accounts with fiat currency (fiat currency is currency that a government has declared to be legal tender). Once the account is funded, the account holder then can exchange the funds in the account for a crypto-currency known as Bitcoin. The exchange is bidirectional, and it allows customers to deposit Bitcoin and then exchange those Bitcoins for fiat currency, and then withdraw those funds. The exchange of fiat currency and Bitcoins incurs a floating rate fee charged by Bitstamp.

According to Bitstamp records, some users of the exchange established their accounts

from computers located in Maryland. Bitstamp records also show that funds were transferred from a number of Bitstamp accounts to financial institutions located in Maryland. Such transactions are transfers of funds on behalf of the public; consequently, Bitstamp meets the definition of a money transmitting business found in 18 U.S.C. section 1960(b)(2).

Money transmitting businesses are required by 31 U.S.C. Section 5330 to register as such with FinCEN. According to FinCEN records, on February 27, 2014, Bitstamp Limited registered as a Money Service Business (MSB); it was not registered prior to that date. According to Maryland Department of Labor, Licensing, and Regulation records, Bitstamp is not registered with the State of Maryland as a money transmitter as required by law. All of the accounts specified on Attachment A were opened before Bitstamp Limited registered with FinCEN in February 2014.

As an MSB, any entity that is required to register with FinCEN under 31 U.S.C. section 5330 is also required to comply with the regulations prescribed under that statute. The MSB (a) is required to register with FinCEN in accordance with 31 CFR 1022.380, (b) is required to conduct a risk assessment of its exposure to money laundering and to implement an Anti-Money Laundering Program in accordance with 31 CFR 1022.210, based on such risk assessment, and (c) is required to comply with the recordkeeping, reporting and transaction monitoring obligations set down in Parts 1010 and 1022 of 31 CFR Chapter X.

According to Bitstamp records, the accounts specified on Attachment A fail to comply with AML requirements under 31 CFR § 1022.210(d)(1)(i) because Bitstamp is unable to determine the identity of any of the holders of those accounts, much less verify that information as required by the regulations prescribed under 31 U.S.C. section 5330. According to Bitstamp records, Bitstamp has made diligent attempts to contact the holders of the accounts in an effort to obtain basic account holder information, such as name, address, and phone number, in order to bring the accounts into compliance with the above-mentioned regulations. At present, Bitstamp has only an email address for most of the accounts specified on Attachment A; a small number of accounts had additional information that could not be verified.

Many of the accounts specified on Attachment A were set up using "TOR Mail" email accounts as the only means of contact. TOR Mail was a hidden service operated on The Onion Router (TOR) that allowed users to send and receive email anonymously. TOR Mail was taken

offline in August 2013 as part of a U.S. federal investigation. Based on my training and experience, I know that a number of users of TOR Mail have been identified and then prosecuted for their association and connection to Silk Road and other underground internet criminal marketplaces. Silk Road was an illicit, internet marketplace in which people with Bitcoins could purchase scheduled drugs, illegal weapons, and false identity documents. Federal authorities took down the Silk Road marketplace in October 2013. Bitstamp records show that a substantial number of the accounts specified on Attachment A went dormant within just a few months following the takedown of the Silk Road by federal authorities, all of which was prior to the date that Bitstamp registered with FinCEN.

Because the accounts on Attachment A were set up and engaged in transactions before Bitstamp was registered with FinCEN, those accounts were operated in violation of 18 U.S.C. section 1960. Those accounts presently are in non-compliance with Anti-Money Laundering regulations, despite due diligence on the part of Bitstamp; consequently, those accounts also cause Bitstamp to be in violation of 18 U.S.C. section 1960 for failing to comply with regulations under 31 U.S.C. section 5330. According to Bitstamp, it attempted to contact each account holder at the email address on file. It also posted a public notice on its website on October 16, 2014, alerting the holders of the accounts specified on Attachment A that they had to bring their accounts into compliance. This notification provided an additional 28 days to bring the accounts into compliance; that period expired on November 13, 2014, and, according to Bitstamp, a few people came forward and those accounts have not been included in Attachment A. The notice stated that, "After the due diligence process is complete, the remaining funds will be subject to government seizure." Bitstamp has agreed to accept a warrant from the U.S. District Court of Maryland and will wire funds to Maryland.

Through that process, Bitstamp has expressed its intent to close the accounts. Because the Attachment A accounts were created and engaged in transactions prior to Bitstamp registering with FinCEN, those accounts were part of an unlicensed money transmitting business in violation of 18 U.S.C. section 1960. The contents of any account are held as capital of the financial institution, which then has a corresponding liability to the account holder for the contents of the account. Because the funds in the accounts specified on Attachment A were involved in transactions and attempted transactions in violation of 18 U.S.C. section 1960, the

4

funds held as capital of Bitstamp Limited that correspond to liabilities pertaining to the accounts specified on Attachment A are subject to seizure and forfeiture pursuant to 18 U.S.C. section 981(a)(1)(A).

Based upon my training and experience, I know that 18 U.S.C. section 981(b)(3) provides that "a seizure warrant may be issued ... by a judicial officer in any district in which a forfeiture action against the property may be filed under Section 1355(b) of title 28, and may be executed in any district in which the property is found...." According to 28 U.S.C. Section 1355(b)(1)(A), a forfeiture action may be brought in "the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred...." Because the affidavit demonstrates that transactions through Bitstamp were initiated and caused by customers in the District of Maryland, and that funds were transferred from Bitstamp to financial institutions in Maryland, the forfeiture action can be brought in the District of Maryland, and the seizure warrant may be issued in the District of Maryland.

## V.   Conclusion

Based on the foregoing, I submit that there is probable cause to believe that the contents of the accounts specified on Attachment A were involved in transactions and attempted transactions in violation of 18 U.S.C. section 1960, and, therefore, the funds held as capital of Bitstamp Limited that correspond to liabilities pertaining to the accounts specified on Attachment A are subject to seizure and forfeiture pursuant to 18 U.S.C. section 981(a)(1)(A).

Shaun Bridges, Special Agent
United States Secret Service


Subscribed and sworn before me on November 18th, 2014.

Stephanie A. Gallagher
United States Magistrate Judge